# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

George Pisarz, : 
                Petitioner : 
                : 
         v. :   No. 735 C.D. 2020
                :   Submitted:  March 26, 2021
Workers' Compensation Appeal : 
Board (Montour LLC, a subsidiary : 
 of Talen Energy Corporation), : 
               Respondent : 

BEFORE:    HONORABLE RENÉE COHN JUBELIRER, Judge
                 HONORABLE ANNE E. COVEY, Judge
                 HONORABLE ELLEN CEISLER, Judge

**OPINION NOT REPORTED**

MEMORANDUM OPINION BY
JUDGE COHN JUBELIRER             FILED:  November 19, 2021

George Pisarz (Claimant) petitions for review of the Workers' Compensation Appeal Board's (Board) July 10, 2020 Order that affirmed a Workers' Compensation Judge's (WCJ) December 21, 2018 Decision granting Montour LLC, a subsidiary of Talen Energy Corporation's (Employer) Petition to Suspend Compensation Benefits (Suspension Petition).  The WCJ granted the Suspension Petition, finding that Claimant had retired pursuant to a settlement agreement, as enforced by the federal court decisions in *Pisarz v. PPL Corporation*, No. 4:10-cv-01432, 2014 WL 220778 (M.D. Pa. Jan. 21, 2014) (*Pisarz I*), and *Pisarz v. PPL Corporation*, 604 F. App'x. 196 (3d Cir. 2015) (*Pisarz II*).  The WCJ further held that Claimant had not established either that he has been looking for work after retirement or had been

forced to retire from the entire workforce due to the work injury. On appeal, Claimant argues that the WCJ erred in granting the Suspension Petition and did not issue a reasoned decision based on the facts of record because the WCJ did not consider Claimant's testimony that the retirement was not voluntary, that Claimant had looked for work, and that Claimant was not capable of performing any work due to the work injury. Because the WCJ failed to consider Claimant's testimony that Claimant did not intend to retire as part of the totality of the circumstances standard set forth in *City of Pittsburgh v. Workers' Compensation Appeal Board (Robinson)*, 67 A.3d 1194 (Pa. 2013), we vacate the Board's Order and remand for further proceedings.

## I.   BACKGROUND

### A.   *History and Procedure*

Claimant first began working for Employer[1] on March 29, 1982, and most recently worked as a plant equipment operator. On July 1, 2008, "Claimant suffered an injury while in the course and scope of his employment with" Employer. (WCJ Decision, Finding of Fact (FOF) ¶ 4.) The work injury was at first "described as a lumbar contusion[,]" but was later expanded by a different WCJ on October 27, 2010, "to include an L5-S1 herniated disk, right side, and subsequent surgery." (*Id*.) Claimant was awarded benefits, and Employer was "directed to pay temporary total disability benefits to Claimant" effective November 21, 2008, and ongoing. (*Id*.) On November 21, 2008, Claimant stopped working for Employer due to the July 1, 2008 injury and never returned to work for Employer. (*Id*. ¶ 6.) Since that time, Claimant "has been receiving Social Security old-age benefits following a transition

---

[1] Claimant was originally employed by PPL Corporation, of which Employer was a part until Employer separated from PPL. (*See* WCJ Decision, Finding of Fact (FOF) ¶ 9; Employer's Brief at 6.)

2

from Social Security disability [(SSD)] benefits when Claimant turned 66 years old." (*Id.* ¶ 10.) According to Claimant, Employer had applied for SSD benefits on Claimant's behalf. (*Id.* ¶ 11.)

      *B.     Federal Court Decisions*

      1. *Pisarz I*

In 2010, while receiving workers' compensation benefits, Claimant filed an employment discrimination action against PPL Corporation, of which Employer was a part at the time, in federal court asserting that Employer discriminated against Claimant based on Claimant's age and disability. Counsel for both parties reached a verbal settlement agreement on October 11, 2012, to settle the discrimination case for $145,000 with conditions. An email on that date from Employer's counsel concerning the settlement agreement stated:

> Please allow this e[]mail to confirm Mr. Pisarz's[2] acceptance of [Employer's] settlement offer of $145,000 . . . in full and complete settlement of any and all claims, including claims for attorney's fees, interest, costs, etc. Mr. Pisarz will also receive pension credits for years of service from 2008 through the date of [the settlement] agreement (**which will be deemed his retirement/resignation date**). Mr. Pisarz's acceptance of this offer includes the execution of a general release and settlement agreement, which [Employer] will prepare, as well as all non-financial terms and conditions previously discussed.

*Pisarz I*, 2014 WL 220778, at *5 (emphasis added). After Claimant refused to sign a written settlement agreement because, among other things, it required Claimant to retire, Employer moved to enforce the settlement agreement in the United States District Court for the Middle District of Pennsylvania (District Court) on December

---

      [2] To avoid confusion between his role as Claimant in this matter and as Plaintiff in the federal employment discrimination action, we refer to him by name when discussing the federal action.

3

28, 2012. The District Court described the "dispute [as] involv[ing] whether Mr. Pisarz expressly authorized [his attorney] **to assent to the settlement, particularly the portion requiring Mr. Pisarz to retire/resign** on the date of the settlement agreement."[3]  *Id*., at *2 (emphasis added).  After conducting an evidentiary hearing, reviewing the evidence, and applying Pennsylvania law, the District Court enforced the settlement agreement.  The District Court found that:

> although Mr. Pisarz held concerns regarding the effect of a settlement with [Employer] on the benefits he associated with workers' compensation, and expressed these concerns to [his attorney] in various ways at various times, Mr. Pisarz had granted [his attorney] authority to settle his case on the terms agreed to with [Employer] on October 11, 2012.

*Id*.  The District Court explained further that:

> [i]t is worth remembering that the [District] Court's inquiry is limited to determining whether Mr. Pisarz granted his counsel express authority to settle his case on the terms memorialized by [each party's] counsel in [the] October 11, 2012 email.  **The inquiry does not concern [Mr.] Pisarz's private desires.  Only his public manifestations of consent (or lack thereof) to the settlement are relevant**.
>
> Further, although Pennsylvania's rule requiring attorneys to obtain express settlement authority is intended to ensure that clients do not forfeit substantial legal rights unknowingly[ and that] attorneys are not expected to be telepathists or even infallible interpreters of clients'[] verbalized communications.  An attorney is, rather, expressly authorized to settle a client's case if he is reasonable in drawing an inference that the [client] intended him so to act although that was not the [client's] intent. . . .  **The rule requiring attorneys to obtain express settlement authority provides limited protection for clients**; namely, **it does not protect clients against the risk of reasonable misapprehension** attendant on even careful use of the English language.

---

[3] We note that Claimant's counsel before the federal courts is not the same counsel representing Claimant in the present workers' compensation dispute.

*Id.*, at \*4 (alterations in original) (citations and internal quotation marks omitted) (emphasis added).

The District Court held that Employer "has carried its burden showing that, **whether [Mr.] Pisarz's true intention or not**," Claimant's attorneys reasonably inferred from Claimant's express communications that Claimant granted them the authority to settle on the terms reached on October 11, 2012. *Id.*, at \*4 (emphasis added). It did so, citing instances where Claimant's attorney, with Claimant's authorization and, on one occasion, within Claimant's presence, made several "purely financial settlement demand[s]" – meaning that the settlement was "in terms of money only" and did not provide for Claimant to remain employed – after which Claimant did not inform the attorney that such demand was not authorized. *Id.*, at \*2-3, n.1. The District Court further cited the testimony of a second attorney, who explained that Claimant understood that the pension accrual would be up until the day of the settlement and retirement and that Claimant had not otherwise raised issues regarding the pension and retirement. *Id.*, at \*3. The District Court also disagreed with the argument that Claimant's signature was a condition precedent to the settlement being enforceable, explaining that, as in *Forte Sports, Inc. v. Toy Airplane Gliders of America., Inc.*, 371 F. Supp. 2d 648 (E.D. Pa. 2004), "the parties here made it relatively clear in the October 11, 2012 e[]mail that the purpose of any future settlement agreement would be merely to formalize what had been 'previously discussed.'" *Pisarz*, 2014 WL 220778, at \*5. According to the District Court, "the . . . e[]mail cannot be reasonably interpreted to mean that a signed writing incorporating its terms was a condition precedent." *Id.* (internal quotation marks omitted). Based on its conclusions that Claimant's attorneys had authority to enter into the settlement agreement on Claimant's behalf and his signature was not a

5

condition precedent, the District Court granted Employer's motion to enforce the settlement agreement.

## 2. *Pisarz II*

Claimant appealed to the United States Court of Appeals for the Third Circuit (Third Circuit) seeking to reverse the District Court's order compelling enforcement of the settlement agreement. The Third Circuit, applying Pennsylvania law, upheld enforcement of the settlement agreement, including Claimant's retirement. *Pisarz II*, 604 F. App'x. at 202. Regarding the argument that Claimant's attorneys lacked proper authority to enter the settlement agreement, the Third Circuit affirmed, citing many of the same interactions between Claimant and counsel as supporting the conclusion that counsel reasonably inferred that express authority had been given. Regarding Claimant's argument that the settlement was invalid because its enforceability was conditioned upon Claimant's signature, the Third Circuit, referencing the email exchange between counsel, reasoned that "[n]othing in the record or in the exchanges between the parties suggests that [Mr.] Pisarz's signing of the agreement was a condition precedent to the agreement." *Id*. at 201.

Finally, Claimant argued that the District Court erred in failing to find, among other things, that

> (1) neither [of his attorneys] fully understood the ramifications of the agreement with [Employer] on [Mr.] Pisarz's pension accruals, health insurance, and [workers'] compensation; (2) [Mr.] Pisarz's attorneys did not advise him that accepting the agreement would lead to [Employer] decreasing his [workers'] compensation benefits; (3) his [workers'] compensation benefits would have increased over time; [and] (4) [Mr.] Pisarz provided undisputed testimony that [Employer] would pay for his health insurance as long as he was on [workers'] compensation[.]

6

*Id.* The Third Circuit explained that none of the claimed omissions were a basis for relief, and that these "assertions of fact, if true, may reveal something about [Mr.] Pisarz's view of the quality of [his attorneys'] work or the wisdom of his continuing to pursue his lawsuit[;]" however, those assertions of fact were "not relevant to whether he gave his express authority to enter into the settlement agreement or to whether his signature was a condition precedent to the agreement." *Id.* at 202. Accordingly, the Third Circuit upheld the District's Court's enforcement of the settlement agreement.

### C. The Suspension Petition and Proceedings Before the WCJ

On March 6, 2018, Employer filed the Suspension Petition against Claimant, seeking to suspend Claimant's benefits effective the date of the Suspension Petition on the basis that Claimant voluntarily retired. The Suspension Petition was assigned to the WCJ, who held hearings on April 10, 2018, May 15, 2018, August 7, 2018, and August 28, 2018. Employer and Claimant appeared at the hearings and were represented by counsel.

At the April 10, 2018 hearing, Employer argued that Claimant had voluntarily withdrawn from the workforce and requested a subpoena for Claimant's income tax forms to reflect Claimant's retirement. (Certified Record (C.R.) Item 9 at 7, 10.) Claimant's Counsel denied that Claimant had voluntarily retired from the workforce. (*Id.* at 9.)

At the May 15, 2018 hearing Claimant testified as follows.[4] Claimant was eligible for a pension but had not started to collect a pension. (Reproduced Record (R.R.) at 26a.) Although Claimant received SSD benefits, Employer had applied for

---

[4] Claimant's testimony can be found in the Reproduced Record at pages 24a through 50a and is summarized in Findings of Fact 8 through 18.

those benefits on Claimant's behalf in order for Claimant to collect long-term disability. Claimant's SSD benefits converted to Social Security Old Age benefits by operation of law at age 66. (*Id*.) Claimant was compelled to take the settlement agreement enforced by the District Court's order, but Claimant denied retiring, ever signing the retirement papers, or ever receiving any payments from either the settlement or pension. (*Id*. at 30a-31a.) When asked about looking for any work in 2016, Claimant stated, "[a]ctually, I did. I went to a Lowe's[,] but they [sic] can't accommodate me" and that although Claimant filled out a formal application, no interview took place. (*Id*. at 33a.) Claimant did not look for work in 2017 or 2018, noting that Claimant had another surgery in 2018. (*Id*.) Regarding Claimant's taxes, Claimant filed taxes in 2014, but not in 2015, 2016, or 2017. (*Id*. at 29a.) Employer asked for an adverse inference based on Claimant not having filed any taxes from 2015 through 2017 to show that Claimant had retired. (*Id*. at 33a-34a.) Claimant agreed to sign a release so that Employer could receive that tax information, stating, "Sure. Yeah. Like I said, I didn't file any." (*Id*. at 35a.)

Finally, at the August 7, 2018 hearing, Claimant testified as follows. Claimant is prescribed medication for the lower back and is still experiencing pain and discomfort in the lower back. (*Id*. at 44a-46a.) Claimant had lower back surgery on March 6, 2018, "[t]o remove the hardware." (*Id*. at 45a.) Claimant did not feel capable of working due to the work-related lower back injury, stating, "[w]ell, because it hurts and, . . . I have to keep moving. That's why I'm so fidgety, because . . . no matter which way I move or whatever I do, it just hurts." (*Id.* at 46a.) Claimant further testified that he could not "really get much relief . . . so it's hard for [him] to even concentrate." (*Id*.) When asked if Claimant remembered agreeing to sign a release for Claimant's taxes, Claimant responded, "No, I never said I would

8

sign it." (*Id*. at 47a.) In addition, Employer offered, and the WCJ admitted, *Pisarz I* and *II* into the record. (C.R. Item No. 12 at 5-7.)

### D. WCJ Decision

On December 21, 2018, the WCJ issued the Decision granting Employer's Suspension Petition. In addition to findings of fact reflecting the factual and procedural background stated above, the WCJ made the following findings of fact:

> 21. The litigation in the Federal Courts has established that, by the terms of a settlement agreement of the age and disability discrimination lawsuit, Claimant retired from his employment with [Employer] as of 10/11/12.
>
> 22. [] **Claimant may or may not have initially intended to retire as a part of the settlement of the discrimination lawsuit.** However, it has been decided by the Federal Courts that the settlement with [Employer] included his agreement to retire.
>
> 23. [] Claimant has not worked or conducted a job search since the effective date of his retirement on October 11, 2012.
>
> 24. To the extent Claimant suggested that he was looking for work, i.e., had engaged in a job search, between October 11, 2012[,] and March 6, 2018, his testimony is rejected as not credible. Claimant agreed that he did not look for work in 2017 or 2018. Moreover, his contact with Lowe's in 2016 cannot be characterized as a job search.
>
> 25. In summary, Claimant has been in temporary total disability status since 11/21/08 as a result of the 07/01/08 work injury. He retired from his employment with [Employer] **effective 10/11/12** and has not been actively looking for work since that date. Claimant did undergo low back surgery on March 6, 2018.

(FOF ¶¶ 21-25 (emphasis added).) Based on *Pisarz I*, and *Pisarz II*, and "that [] Claimant has not been seeking employment since the effective date of his retirement on October 11, 2012[,]" the WCJ concluded that Employer had proven Claimant

9

voluntarily withdrew from the labor market and that the burden shifted to Claimant to show that he "is seeking employment following retirement or that he has been forced into retirement because of the work injury." (WCJ Decision, Conclusion of Law (COL) ¶ 7.) The WCJ concluded that "Claimant has not carried his burden of proof and that, therefore, benefits must be suspended effective March 6, 2018." (*Id.* ¶ 8.) Accordingly, the WCJ granted Employer's Suspension Petition and suspended Claimant's wage loss benefits as of March 6, 2018.[5]

### E. Board's Opinion

Claimant filed an appeal to the Board alleging that conclusions of law seven and eight were in error. (C.R. Item No. 5.) Claimant argued to the Board that Employer "failed to meet its burden of proof as it failed to offer any medical evidence that Claimant can work in any capacity and failed to provide Claimant a Notice of Ability to Return to Work" (LIBC-757). (Board Opinion (Op.) at 2.) Further, Claimant argued "that the WCJ's Decision is not reasoned because the WCJ failed to make any credibility determination regarding Claimant's testimony that he feels unable to work in any capacity." (*Id.*)

The Board affirmed the WCJ's Decision. The Board, citing *Kachinski v. Workmen's Compensation Appeal Board (Vepco Construction Co.)*, 532 A.2d 374 (Pa. 1987), stated that, generally, "to obtain a suspension of benefits, an employer must prove that employment has been made available to a claimant." (*Id.*) However, the Board noted that this rule is inapplicable where the employer establishes that the claimant has voluntarily left the workforce and has no intention of seeking future employment. If an employer does so, "the burden shifts to the claimant to show that

---

[5] The WCJ noted that "the entry of a suspension herein does not preclude the right of Claimant to file a Review Petition or a Reinstatement Petition seeking to obtain a change of status. Again, however, the burden of proof would be on [] Claimant." (WCJ Decision, COL ¶ 9.)

[the claimant] is seeking employment following retirement or that [the claimant] was forced into retirement because of the work injury." (*Id.* at 3 (citing *Robinson*, 67 A.3d at 1209-10; *Se. Pa. Transp. Auth. v. Workmen's Comp. Appeal Bd. (Henderson)*, 669 A.2d 911, 912 (Pa. 1995)).) The Board also noted that "[d]eterminations of credibility and weight to be accorded evidence are the prerogative of the WCJ, not this Board." (*Id.* at 5 (citing *Vols v. Workmen's Comp. Appeal Bd. (Alperin, Inc.)*, 637 A.2d 711 (Pa. Cmwlth. 1994)).)

Applying these principles, the Board concluded the WCJ did not err in granting the Suspension Petition because Employer met its burden of proving that Claimant had voluntarily retired through *Pisarz I* and *II*, which "included Claimant's agreement to retire, as well as the fact that Claimant ha[d] not adequately looked for work since retiring," determinations that could not be revisited. (*Id.* at 6.) The Board recognized the WCJ rejected Claimant's testimony that Claimant "had engaged in a job search between October 11, 2012, and March 6, 2018," and concluded that "the objective facts on which the WCJ relied were substantial evidence, sufficient in nature, to support the WCJ's determination that Claimant had voluntarily retired, and he had not engaged in a job search since retirement, or was forced into retirement because of his work injury." (*Id.* at 6.)

The Board disagreed with Claimant that Employer did not meet its burden of proof because it did not offer any medical evidence that Claimant could work in any capacity and had not provided Claimant with an LIBC-757. (*Id.*) It held that these requirements would be a part of Employer's burden under *Kachinski*, but having established Claimant's voluntary retirement through the settlement agreement, Employer did not have to prove these things to obtain a suspension here.

11

The Board also rejected Claimant's argument that the WCJ's Decision was not reasoned. The Board stated that the WCJ had adequately summarized Claimant's evidence and testimony, including the testimony about Claimant not feeling capable of working. Further, the Board held that although the WCJ did not make a finding specifically rejecting this portion of Claimant's testimony, the WCJ "clearly concluded that Claimant failed to meet his burden." (*Id.* at 7.) Further, the Board, citing *Acme Markets, Inc. v. Workers' Compensation Appeal Board (Brown)*, 890 A.2d 21 (Pa. Cmwlth. 2006), stated that "a reasoned decision does not require the WCJ to give a line-by-line analysis of each statement by each witness, explaining how a particular statement affected the ultimate decision." (*Id.*) Contrary to Claimant's arguments, the Board held that "the WCJ had made the necessary credibility determinations and explained" them, which "satisfied the reasoned decision requirements of Section 422(a)" of the Workers' Compensation Act (Act),[6] 77 P.S. § 834. (*Id.* at 7-8.) Thus, the Board affirmed the WCJ's Decision.

Commissioner David Wilderman dissented, stating that the federal court enforced settlement was "inapplicable." (*Id.* at 10.) Commissioner Wilderman reasoned that "[t]he [f]ederal [c]ourt vested all power to 'settle' with [C]laimant's lawyer- regardless of [C]laimant's objection to retirement. Relying on the [f]ederal [c]ourt [o]pinion does not bind [C]laimant in [workers' compensation]." (*Id.*) This petition for review followed.[7]

---

[6] Act of June 2, 1915, P.L. 736, *as amended*, 77 P.S. § 834.

[7] This Court's "scope of review in a workers' compensation appeal is limited to determining whether necessary findings of fact are supported by substantial evidence, whether an error of law was committed, or whether constitutional rights were violated." *Elberson v. Workers' Comp. Appeal Bd. (Elwyn, Inc.)*, 936 A.2d 1195, 1198 n.2 (Pa. Cmwlth. 2007).

## II.     PARTIES' ARGUMENTS

### A.     *Claimant's Arguments*

Claimant raises multiple issues for this Court's review. First, Claimant argues that the Board erred in affirming the WCJ's grant of the Suspension Petition based on the settlement agreement because Claimant was forced to enter into that agreement. In particular, Claimant argues there was no voluntary retirement because: (1) the settlement agreement was negotiated by attorneys; (2) Claimant is a lay-person; (3) Claimant refused to sign the settlement agreement because it included Claimant's retirement; (4) Claimant engaged in significant litigation in federal court to preclude the agreement's enforcement; (5) the settlement amount was considerably less than Claimant would have received for a settlement of both the discrimination action and Claimant's workers' compensation indemnity claim; and (6) Claimant never actually accepted the settlement proceeds nor has Employer paid Claimant pension benefits. Claimant contends these facts do not support the WCJ's conclusion that Claimant voluntarily retired and the WCJ failed to consider Claimant's testimony regarding the involuntary nature of the retirement. This failure to consider that testimony, Claimant maintains, results in the WCJ's Decision not being reasoned. Alternatively, Claimant argues that the Board erred in affirming the WCJ's grant of the Suspension Petition because Employer could not meet its burden of proof here when it failed to offer into evidence the requisite LIBC-757 showing that Claimant had been released by a physician to return to work and/or that Claimant was required to look for work.

Claimant also asserts that the WCJ failed to issue a reasoned decision because the WCJ did not make express credibility determinations on, or give adequate consideration of, Claimant's testimony regarding the extent of Claimant's disability

and that the work injury forced Claimant out of the entire labor market due to his recent surgery. Thus, Claimant argues that, even if Employer met its initial burden and the burden shifted, Claimant subsequently met his burden.

B. *Employer's Arguments*

Employer responds that the Board properly affirmed the WCJ's Decision granting the Suspension Petition because it was based on the totality of the circumstances, as required by *Robinson*, is supported by substantial, competent evidence, and is reasoned. First, Employer argues that, based on the totality of the circumstances, it established that Claimant voluntarily left the workforce and that the burden shifted to Claimant to prove that he was either seeking employment following retirement or that he was forced into retirement because of the work injury. Employer asserts there was no error in relying on the settlement agreement in Claimant's federal litigation, as affirmed by the Third Circuit, to establish Claimant's voluntary retirement. Employer maintains that Claimant's argument that there was no voluntary retirement is barred by "res judicata, which 'prevents the re-litigation of claims and issues in subsequent proceedings[,]'" because "the matter of Claimant's retirement has been previously litigated" in the federal courts, which "held that whether he signed the [agreement] or not, Claimant [was] retired." (Employer's Brief (Br.) at 13 (citing *Weney v. Workers' Comp. Appeals Bd. (Mac Sprinkler Sys., Inc.)*, 960 A.2d 949, 953 (Pa. Cmwlth. 2008)).) Additionally, Employer argues that the Board properly affirmed the WCJ's Decision that it did not need to offer into evidence an LIBC-757 or any medical evidence because Employer

14

had met its burden of proving Claimant's voluntary retirement through the settlement agreement.[8]

Second, Employer asserts that having found that Claimant voluntarily retired, the Board and the WCJ properly shifted the burden to Claimant to prove that he was either seeking employment after retirement or that he was forced into retirement because of the work injury, which Claimant did not do. Employer argues that Claimant cannot prevail because the WCJ rejected his testimony regarding Claimant's alleged job search and his efforts or non-efforts in seeking employment had been minimal over a 10-year period. As for Claimant's testimony regarding an inability to return to the workforce or that Claimant had retired from the entire workforce due to the work injury, Employer notes that Claimant did not present any medical evidence to support those claims. For these reasons, Employer asserts, neither the WCJ nor the Board erred in finding that Claimant did not meet the burden to establish an ongoing entitlement to benefits notwithstanding his retirement.

## III. DISCUSSION

### A. *Legal Background*

Generally, to obtain a suspension of benefits, an employer must prove that employment has been made available to a claimant, *Kachinski,* 532 A.2d at 379, or establish the claimant's earning power under Section 306(b)(2) of the Act, 77 P.S. § 512(2).[9] However, this rule is inapplicable where a claimant has voluntarily left

---

[8] Employer further argues the WCJ's Decision should be affirmed due to Claimant's refusal to provide financial records. However, because we ultimately conclude that a remand is necessary for the WCJ to issue a new decision, we leave the question of how Claimant's refusal should be treated to the WCJ.

[9] Section 306(b)(2) discusses what the legislature means by "earning power," as follows:

15

the workforce with no intention of seeking future employment. *Henderson*, 669 A.2d at 912. Once retirement is established, for disability compensation to continue, "a claimant must show that [the claimant] is seeking employment after retirement or that [the claimant] was forced into retirement because of [the] work-related injury." *Id.* at 913; *The Alpine Grp. v. Workers' Comp. Appeal Bd. (DePellegrini)*, 858 A.2d 673, 677 (Pa. Cmwlth. 2004).

An employer seeking a suspension of benefits based on the claimant's retirement must establish that the claimant has voluntarily withdrawn from the workforce. *Robinson*, 67 A.3d at 1209.[10] To do so, the employer must show, "in the

---

(2) "Earning power" shall be determined by the work the employe is capable of performing and shall be based upon expert opinion evidence which includes job listings with agencies of the [Department of Labor and Industry (Department)], private job placement agencies and advertisements in the usual employment area. Disability partial in character shall apply if the employe is able to perform his previous work or can, considering the employe's residual productive skill, education, age and work experience, engage in any other kind of substantial gainful employment which exists in the usual employment area in which the employe lives within this Commonwealth. If the employe does not live in this Commonwealth, then the usual employment area where the injury occurred shall apply. If the employer has a specific job vacancy the employe is capable of performing, the employer shall offer such job to the employe. In order to accurately assess the earning power of the employe, the insurer may require the employe to submit to an interview by a vocational expert who is selected by the insurer and who meets the minimum qualifications established by the [D]epartment through regulation. The vocational expert shall comply with the Code of Professional Ethics for Rehabilitation Counselors pertaining to the conduct of expert witnesses.

77 P.S. § 512(2).

[10] The relevant language from *Robinson* is as follows:

Where the employer challenges the entitlement to continuing compensation on grounds that the claimant has removed himself or herself from the general workforce by retiring, the employer has the burden of proving that the claimant has voluntarily left the workforce. There is no presumption of retirement arising from the fact that a claimant seeks or accepts a pension, much less a disability pension; rather, the worker's acceptance of a pension entitles the employer only to a

16

context of the totality of the circumstances[,]" that the claimant has chosen not to return to work. *Id*. The employer need not prove a claimant's state of mind; rather, the employer may satisfy its burden of proving voluntary retirement "by objective facts, including the claimant's receipt of a pension, the claimant's own statements relating to voluntary withdrawal from the workforce, and the claimant's efforts or non-efforts to seek employment." *Id* at 1210. However, although an employer is not required to prove a claimant's subjective intent, the WCJ **must** consider all credible and relevant evidence, including a claimant's testimony regarding their intent to retire or remain in the workforce. *Id.* at 1209-10 (holding that "[t]he factfinder must also evaluate all of the other relevant and credible evidence before concluding that the employer has carried its burden of proof"). *See also Stein v. Workers' Comp. Appeal Bd. (Sch. Dist. of Phila.)* (Pa. Cmwlth., No. 782 C.D. 2016, filed Feb. 13, 2017), slip op. at 12[11] (indicating that a claimant's testimony is part of the "context" that is to be considered in determining whether the claimant had

---

permissive inference that the claimant has retired. Such an inference, if drawn, is not on its own sufficient evidence to establish that the worker has retired-the inference must be considered in the context of the totality of the circumstances. The factfinder must also evaluate all of the other relevant and credible evidence before concluding that the employer has carried its burden of proof.

If the employer produces sufficient evidence to support a finding that the claimant has voluntarily left the workforce, then the burden shifts to the claimant to show that there in fact has been a compensable loss of earning power. Conversely, if the employer fails to present sufficient evidence to show that the claimant has retired, then the employer must proceed as in any other case involving a proposed modification or suspension of benefits.

*Robinson*, 67 A.3d at 1209-10.

[11] This Court's unreported memorandum opinions may be cited for their persuasive value pursuant to Rule 126(b) of the Pennsylvania Rules of Appellate Procedure, Pa.R.A.P. 126(b), and Section 414(a) of the Commonwealth Court's Internal Operating Procedures, 210 Pa. Code § 69.414(a).

17

voluntarily retired); *Butler Motor Transit/Coach USA v. Workers' Comp. Appeal Bd. (Smith)* (Pa. Cmwlth., No. 2100 C.D. 2013, filed June 5, 2014), slip op. at 9 (holding "the factfinder must look at all the evidence presented on the issue regarding whether a claimant has voluntarily withdrawn from the workforce," including a claimant's testimony that the claimant has not withdrawn from the workforce); *Keene v. Workers' Comp. Appeal Bd. (Ogden Corp.)*, 92 A.3d 897, 901-02 (Pa. Cmwlth. 2014) (pointing to statements that the claimant did not consider herself retired and disputed the claim of retirement, as sufficient to support the WCJ's conclusion that no voluntary withdrawal had occurred).

We previously held:

> Once the employer produces sufficient evidence to support a finding that the claimant has voluntarily withdrawn from the workforce, the burden shifts to the claimant to show a compensable loss of earning power. . . .  The claimant does this by proving either that [the claimant] was looking for work after retirement or that [the claimant] was forced out of the labor market because of [the claimant's] work injury.

*Kett v. Workers' Comp. Appeal Bd. (Consolidation Coal Co.)* (Pa. Cmwlth., No. 667 C.D. 2019, filed Aug. 19, 2020), slip op. at 6-7 (internal citations and footnote omitted).  To prove that a claimant was forced out of the labor market because of the work injury, the "claimant must demonstrate that they were forced out of the entire labor market, not just [the] pre-injury job." *Id.*, slip op. at 7 (citing *Day v. Workers' Comp. Appeal Bd. (City of Pittsburgh)*, 6 A.3d 633, 638 (Pa. Cmwlth. 2010)).

Claimant also challenges the WCJ's Decision as not satisfying the reasoned decision requirements of the Act.  Section 422(a) of the Act provides that all parties in a workers' compensation case "are entitled to a reasoned decision containing findings of fact and conclusions of law based upon the evidence as a whole which clearly and concisely states and explains the rationale for the decisions so that all

18

can determine why and how a particular result was reached." 77 P.S. § 834. The decision of a WCJ is "reasoned" if it allows for meaningful appellate review without further elucidation. *Daniels v. Workers' Comp. Appeal Bd. (Tristate Transp.)*, 828 A.2d 1043, 1052 (Pa. 2003). "[W]hile summaries of testimony alone would be insufficient to satisfy the reasoned decision requirement, where a WCJ summarizes testimony and also objectively explains [the WCJ's] credibility determinations, the decision will satisfy the requirement." *Amandeo v. Workers' Comp. Appeal Bd. (Conagra Foods)*, 37 A.3d 72, 76 (Pa. Cmwlth. 2012). In addition, a WCJ cannot simply ignore uncontroverted evidence but, rather, must adequately explain the reasons why the WCJ has rejected such evidence. 77 P.S. § 834. Unless made arbitrarily or capriciously, a WCJ's credibility determinations will be upheld on appeal. *Empire Steel Castings, Inc. v. Workers' Comp. Appeal Bd. (Cruceta)*, 749 A.2d 1021, 1027 (Pa. Cmwlth. 2000). Lastly, "[a] reasoned decision does not require the WCJ to give a line-by-line analysis of each statement by each witness, explaining how a particular statement affected the ultimate decision." *Gumm v. Workers' Comp. Appeal Bd. (Steel)*, 942 A.2d 222, 228 (Pa. Cmwlth. 2008) (quoting *Brown*, 890 A.2d at 26.

With these principles in mind, we turn to Claimant's arguments that the WCJ erred in finding that Employer met its burden of proof and that Claimant did not meet the burden of proof required for Claimant to continue to receive workers' compensation benefits.

### B. Employer's Burden of Proof

Claimant contends that the WCJ erred in finding that the issue of Claimant's retirement was settled in *Pisarz I* and *II* because Claimant adamantly refused to sign and agree to the settlement agreement, particularly because it required retirement,

19

which supports the argument that Claimant has not voluntarily retired. Claimant asserts the WCJ should have considered Claimant's testimony and evidence on these points and failed to do so. Without that retirement, Claimant argues, Employer's burden should be what is normally expected under *Kachinski*, which Employer did not satisfy. Employer responds that res judicata prevents relitigation of whether Claimant agreed to retire in the settlement agreement, which, Employer argues, constitutes substantial evidence to support the WCJ's conclusion that Claimant voluntarily retired.

"[T]echnical res judicata and collateral estoppel are both encompassed within the parent doctrine of res judicata, which 'prevents the relitigation of claims and issues in subsequent proceedings.'" *Weney*, 960 A.2d at 954 (quoting *Henion v. Workers' Comp. Appeal Bd. (Firpo & Sons, Inc.)*, 776 A.2d 362, 365 (Pa. Cmwlth. 2001)). Collateral estoppel, also referred to as issue preclusion, "is designed to prevent relitigation of an issue in a later action, despite the fact that the later action is based on a cause of action different from the one previously litigated." *Pucci v. Workers' Comp. Appeal Bd. (Woodville State Hosp.)*, 707 A.2d 646, 647-48 (Pa. Cmwlth. 1998). Collateral estoppel or issue preclusion renders issues of fact or law incapable of relitigation in a subsequent suit if four elements are met:

> (1) the issue decided in the prior adjudication **was identical** with the one presented in the later action; (2) there was a final judgment on the merits; (3) the party against whom the plea is asserted was a party or in privity with the party to the prior adjudication; and (4) the party against whom it is asserted had a full and fair opportunity to litigate the issue and question in a prior action.

*Dep't of Transp. v. Crawford*, 550 A.2d 1053, 1054 (Pa. Cmwlth. 1988) (emphasis added). In order to satisfy the doctrine of collateral estoppel, all four elements must be met. *Gow v. Dep't of Educ.*, 763 A.2d 528, 532 (Pa. Cmwlth. 2000).

20

Collateral estoppel is designed to "protect[] litigants from assuming the burden of re-litigating the same issue with the same party, and [to] promot[e] judicial economy through preventing needless litigation." *McNeil v. Owens-Corning Fiberglas Corp.*, 680 A.2d 1145, 1148 (Pa. 1996). "Collateral estoppel relieves parties of the cost and vexation of multiple lawsuits, conserves judicial resources, and, by preventing inconsistent decisions, encourages reliance on adjudication." *Off. of Disciplinary Counsel v. Kiesewetter*, 889 A.2d 47, 51 (Pa. 2005) (citing *Shaffer v. Smith*, 673 A.2d 872, 875 (Pa. 1996)).

Reviewing the elements of the doctrine of collateral estoppel in relation to the matter before us, we cannot say that Claimant's argument that there was no **voluntary** retirement here is barred such that the WCJ was precluded from considering Claimant's evidence on that issue. Whether Claimant gave express authority to counsel to settle the federal discrimination action, in which Claimant's "retirement/resignation"[12] was a term, *Pisarz I*, 2014 WL 220778, at *5, is **not identical** to whether Claimant **voluntarily** retired and left the workforce for workers' compensation purposes. The federal litigation centered on whether Claimant had, objectively, provided counsel with the requisite express authority to enter into a binding settlement agreement, which included Claimant's retirement/resignation from Employer. As the District Court explained, its inquiry into that question "**d[id] not concern [Mr.] Pisarz's private desires**" and, "**whether [Mr.] Pisarz's true intention or not**," his counsel "[was] reasonable in inferring that . . . [Mr.] []Pisarz[] granted them authority to settle on the terms reached . . . on October 11, 2012." *Id.,* at *4 (emphasis added). As Commissioner

---

[12] Notably, the language used in the October 11, 2012 email uses retirement and resignation interchangeably, which raises additional questions regarding how the settlement agreement intended to end Claimant's employment from Employer.

21

Wilderman noted in his dissent, "[t]he [f]ederal [c]ourt vested all power to 'settle' with [C]laimant's lawyer – **regardless of [C]laimant's objection to retirement**. Relying on the [f]ederal [c]ourt [o]pinion does not bind [C]laimant in [workers' compensation]." (Board Op. at 10 (emphasis added).) The issue in this case, whether Claimant voluntarily retired for workers' compensation purposes, **does** concern Claimant's private desires and intent, at least to the extent that they should be considered by the WCJ in context with the other evidence presented. *Robinson*, 67 A.3d at 1209; *Stein*, slip op. at 12; *Butler Motor Transit*, slip op. at 10-11; *Keene*, 92 A.3d at 901-02. Thus, the federal courts in *Pisarz I* and *II* and the WCJ here were presented with two different issues, the resolution of which required the application of different standards.

It is noteworthy that, had Claimant and Employer wished to deliberately settle his workers' compensation claim, the Act would have required that the compromise and release agreement be "explicit," and that, prior to approval, a WCJ consider the agreement "in [an] open hearing" and "determine[] that the claimant understands the full legal significance of the agreement." Section 449(b) of the Act, 77 P.S. § 1000.5(b).[13] Thus, had an agreement been made in the workers' compensation arena, Claimant's understanding the legal significance of the agreement would have been paramount and Claimant would not have been compelled to assent to an agreement with which he did not agree. The compelled enforcement of a settlement agreement in a different arena, in which the use of a single phrase "retirement/resignation" might effectively settle a workers' compensation matter, without a claimant understanding the full legal significance of the agreement, could

---

[13] Section 449(b) was added by Section 22 of the Act of June 24, 1996, P.L. 350, 77 P.S. § 1005(b).

22

short-circuit the workers' compensation settlement process and, more importantly, the humanitarian purposes of the Act.

Because the issue in the federal cases and the issue in the workers' compensation proceeding are not identical, the first element of collateral estoppel has not been met, and the WCJ should have considered Claimant's testimony and arguments regarding Claimant's intent not to retire in determining whether Employer met its **initial** burden of proof.[14] However, here, the WCJ found that "Claimant retired from his employment with [Employer] as of [October] 11[, 2012]," per the litigation in the federal courts, and that "Claimant may or may not have initially intended to retire as part of the settlement agreement . . . , [but] it has been decided by the [f]ederal [c]ourts that the settlement with [Employer] included his agreement to retire." (FOF ¶¶ 21- 22.) These findings reflect that the WCJ found Claimant's retirement conclusively established by the federal courts in *Pisarz I* and *II*, and, therefore, the WCJ did not consider Claimant's evidence that his intent was not to retire, that Claimant had not received any money from the settlement or pension, and that Claimant was **compelled** to accept this agreement by the federal courts, evidence Claimant argues could support a finding that his retirement was not voluntary. Claimant is **not** arguing that the settlement agreement is not binding or that counsel there lacked express authority to enter into the settlement agreement.[15] Rather, Claimant essentially asks that the federal court decisions be considered, as any other evidence presented by an employer would be, in the context of the totality

---

[14] Because we conclude the first element is not met, we need not address the others. *Gow*, 763 A.2d at 532.

[15] Thus, the WCJ's consideration of the evidence presented in these workers' compensation proceedings to determine whether Claimant voluntarily retired, which relate to Claimant's ongoing receipt of workers' compensation benefits, would not violate the purposes of collateral estoppel because it would not undermine the federal courts' decisions in *Pisarz I* and *II* or create inconsistent decisions on the same issue. *Kiesewetter*, 889 A.2d at 51.

23

of the circumstances, which includes Claimant's own statements and evidence. We agree that the WCJ should have done so, and, because the WCJ did not, we must vacate and remand for the WCJ to issue a new decision in which all of the evidence presented is considered "in the context of the totality of the circumstances," *Robinson*, 67 A.3d at 1209.[16]

## IV. CONCLUSION

Based on the foregoing, the Board and WCJ erred in not considering Claimant's evidence and arguments in determining whether Employer met its initial burden of showing that Claimant voluntarily retired. Because the WCJ did not consider all of the evidence presented, we vacate the Board's Order and remand to the Board to remand to the WCJ for the WCJ to issue a new decision which does so.

_____
**RENÉE COHN JUBELIRER,** Judge

---

[16] As a result of our disposition, we do not address Claimant's other arguments on appeal.

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

George Pisarz,                                      :
                              Petitioner            :
                                                    :
                      v.                            :    No. 735 C.D. 2020
                                                    :
Workers' Compensation Appeal                        :
Board (Montour LLC, a subsidiary                    :
 of Talen Energy Corporation),                      :
                              Respondent            :

## **O R D E R**

**NOW**, November 19, 2021, the Order of the Workers' Compensation Appeal Board (Board), entered in the above-captioned matter, is **VACATED**, and this matter is **REMANDED** to the Board to remand to the Workers' Compensation Judge for a new decision in accordance with the foregoing opinion.

Jurisdiction relinquished.

 

 

_____
**RENÉE COHN JUBELIRER,** Judge